**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lynn Marie Kelly, et al., | No. CV-15-01397-PHX-NVW |
| Plaintiffs, | **ORDER** |
| v. | |
| Mark J. Lindsey, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 51). For the following reasons, the Motion will be granted.

**I.     LEGAL STANDARD**

A motion for summary judgment tests whether the opposing party has sufficient evidence to merit a trial. Summary judgment should be granted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of the suit under the governing law, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of showing the absence of genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant shows an absence of evidence to support the nonmoving party's case, the burden shifts to the party resisting the motion. The party opposing summary judgment must then

"set forth specific facts showing that there is a genuine issue for trial" and may not rest upon the pleadings. *Anderson*, 477 U.S. at 256. To carry this burden, the nonmoving party must do more than simply show there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. 56(e)(2).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, must not weigh the evidence or assess its credibility, and must draw all justifiable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255. Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

**II. UNDISPUTED MATERIAL FACTS**

Plaintiffs Lynn Marie Kelly and Charles Estes ("Plaintiffs") are co-conservators of Nicholas Scott Kelly ("Kelly"), who suffers from various mental disorders, including psychosis, bipolar disorder, post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), panic attacks, and depression. They brought this action to recover damages for personal injuries suffered by Kelly during an incident with the police on June 15, 2014.

On that night, the Glendale Police Department responded to a 9-1-1 call concerning a disturbance at an apartment complex. The caller reported a man was kicking the door of a nearby apartment and yelling at his girlfriend who was inside with her children. According to the caller, the man was "pretty upset. I don't know what he'll do when he gets inside."

Several patrol units were dispatched to the apartment, and Officer Mark J. Lindsey was among the officers who responded. On arriving, he identified the apartment where

the disturbance was taking place, which was located about 75 yards from the 9-1-1 caller's apartment. Officer Lindsey and his supervisor, Sergeant Sterrett, approached the unit and contacted two people on the patio, Kelly and his mother. Eventually, three other officers also arrived to the scene.

Kelly had smoked marijuana and consumed as many as 18 bottles of beer that day. He testified he was intoxicated to the point of being "out of control" and has no independent memory of the incident due to an alcohol-induced "blackout." In addition, Plaintiffs have no eyewitnesses of the full encounter with police, and the evidence they presented does not create any genuine issue of material fact as to what occurred that night, as provided in the sworn testimony of various officers.

Kelly told the officers he had been in an argument. He said he had been loud but denied kicking the door. Sergeant Sterrett observed numerous beer containers lying around the patio and could tell Kelly was intoxicated "because of his slurred speech and very agitated demeanor."

While speaking with Kelly, Officer Lindsey learned that Kelly's girlfriend was inside with their two children. The girlfriend told Officer Lindsey that after she had an argument with Kelly earlier that day, she took her children to her parents' house. When she returned home that night, she found Kelly had been drinking. Because she "doesn't like it when [Kelly] drinks," she locked Kelly outside on the patio, and then locked herself and the children in a bedroom. The girlfriend called Kelly's mother to tell her to take Kelly to her house for the night until he was sober. The mother agreed and had arrived by the time the officers responded. The girlfriend confirmed that Kelly had been kicking the door. She said she would prefer to stay at the house for the evening, but if Kelly chose not to leave, then she would leave with the children. Kelly's mother, who by that time had come inside the apartment as well, told Officer Lindsey she was willing to take Kelly for the night.

After interviewing the girlfriend, Officer Lindsey returned to the patio to speak with Kelly. Officer Lindsey suggested that Kelly stay at his mother's house for the night

to avoid being arrested. In response, Kelly stood up from his chair and said he was not going to leave and that the officers needed to leave his property.

According to Sergeant Sterrett, at that time Kelly was standing with his body very rigid and his arms in a tightened manner; his fists were also clenched and his arms were raised slightly above his waistline. Officer Lindsey told Kelly he could not go inside and needed to sit down. Kelly did not comply, despite Officer Lindsey's commands, and tried to enter the apartment.

Officer Lindsey attempted to prevent Kelly from entering by grabbing his arm, but Kelly pulled away and began to struggle with Officer Lindsey and the other officers. According to Sergeant Sterrett, Kelly "was yelling and started flailing and started kicking his legs at the officers as well as started swinging both of his arms." Sergeant Sterrett also observed that Kelly tried to punch the officers and kick Officer Lindsey in the groin. Officer Lindsey and another officer tried to gain control over Kelly but efforts to grab his arms and legs were unsuccessful. Kelly continued resisting, even while Officer Lindsey issued multiple verbal commands to stop resisting. At that point, Officer Lindsey punched Kelly in the face three times, and thereafter, other officers applied Taser cycles to subdue him.[1] Only after all of these measures of force had been applied did Kelly finally give up and allow the officers to handcuff him.

Kelly suffered a broken nose and other minor injuries during the arrest. He was treated for injuries at a local hospital and then booked into Maricopa County Jail on four charges: disorderly conduct / violent behavior; domestic violence; resisting arrest with physical force; and aggravated assault against a peace officer. Kelly later pled guilty to disorderly conduct and possession of marijuana and the other charges were dismissed.

Subsequently, Plaintiffs brought this action for damages on behalf of Kelly. The complaint alleges four state law claims against Officer Lindsey and one federal claim against both Officer Lindsey and the City of Glendale.

---

[1] It is undisputed that Officer Lindsey did not apply the Taser cycles.

## III. ANALYSIS

Defendants move for summary judgment on all claims. In Plaintiffs' response, they fail to address many of Defendants' key legal arguments or offer admissible evidence to create a genuine dispute of any material facts. Plaintiffs' failure to address the majority of these arguments is enough for this Court to grant summary judgment in Defendants' favor on those issues. *See* LRCiv. 7.2(i); *Brydges v. Lewis*, 18 F.3d 651, 652 (9th Cir. 1994). As provided below, however, summary judgment is proper in any event.

### A. Count Four: Excessive Use of Force

Count Four alleges "Defendant Lindsey's three hammer blows and/or roughing up of Mr. Kelly was entirely unjustified and constituted an unreasonable and excessive use of force in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983." It further alleges "Defendant City of Glendale may be liable for its failure to train Defendant Lindsey [and other officers]."

Municipalities may be sued under § 1983 for monetary damages when an allegedly unconstitutional action implements or executes a municipality's formal policy or informal custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). To hold a municipality liable under § 1983 for failure to train, a plaintiff must prove the municipality failed to train certain employees about their legal duty to avoid violating citizens' rights and that the failure amounts to deliberate indifference to the rights of persons with whom the employees come into contact. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiffs did not present any evidence of a policy or custom to support its failure to train theory and they concede as much in their response. For that reason alone, Defendants are entitled to summary judgment on Count Four to the extent it seeks to hold the City of Glendale liable. More importantly, both the City of Glendale and Officer Lindsey are entitled to summary judgment on Count Four because no constitutional violation occurred.

To prevail on a Section 1983 claim, Plaintiffs must show, among other things, a deprivation of a constitutional or federal statutory right. *Jones v. Williams*, 297 F.3d 930,

934 (9th Cir. 2002). Here, the alleged deprivation is that Officer Lindsey used excessive and unreasonable force when he arrested Kelly in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

The Fourth Amendment permits police officers to use reasonable force when making an arrest. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. The inquiry "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "Whether a particular use of force was 'objectively reasonable' depends on several factors, including the severity of the crime that prompted the use of force, the threat posed by a suspect to the police or to others, and whether the suspect was resisting arrest." *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006) (citing *Graham*, 490 U.S. at 396).

Applying that analysis, the evidence indisputably demonstrates that Officer Lindsey's use of force was objectively reasonable. Kelly was intoxicated to the point of being "out of control." At least one officer noticed "because of his slurred speech and very agitated manner." Kelly's girlfriend had locked him out of the apartment and then locked herself and her two children in a bedroom to keep away from Kelly. She also called Kelly's mother for help. The girlfriend told Officer Lindsey he was kicking the door and Kelly admitted that he was yelling. The noise was loud enough for the neighbors to hear and at least one of them called 9-1-1. Based on this, Officer Lindsey reasonably could have believed that the situation was volatile and had the potential for violence, even if the initial call was for a domestic disturbance.

Further, Officer Lindsey reasonably could have believed that Kelly posed an immediate threat to the safety of the officers, his girlfriend, and the children when he refused to follow verbal commands to sit down and not to enter the apartment. Only after Kelly refused did Officer Lindsey use force to keep Kelly from going inside. And the use

of force gradually escalated. First, Officer Lindsey first tried to grab Kelly's arm. But Kelly pulled away and struggled with Officer Lindsey and the other officers. According to Sergeant Sterrett, Kelly "was yelling and started flailing and started kicking his legs at the officers as well as started swinging both of his arms." Sergeant Sterrett also observed that Kelly tried to punch the officers and kick Officer Lindsey in the groin. Officer Lindsey and another officer again tried to gain control over Kelly but efforts to grab his arms and legs to restrain him were unsuccessful.

After these physical holds proved unsuccessful, Officer Lindsey struck Kelly in the face three times to gain compliance. As the police-practices expert stated, "[t]he use of focused blows to the head is an accepted practice and technique taught by the Arizona Law Enforcement Academy."[2] The purpose of this technique "is to disrupt the offender's train of thought and allow the officers enough opportunity to take the suspect into custody. The quicker the physical confrontation is ended, the less probability for continued injury to either the officer or the suspect." Even after he had been struck three times, Kelly continued to struggle. He did not stop resisting and allow himself to be handcuffed until other officers applied Taser cycles to his body.

In sum, in light of the foregoing, Officer Lindsey's use of force was objectively reasonable under the circumstances. Kelly was highly intoxicated and agitated when Officer Lindsey arrived. He had been arguing with his girlfriend who had locked him outside and locked herself and her two children into a bedroom. Given these elements, Officer Lindsey reasonably could have believed Kelly that posed a threat to those around him. Officer Lindsey applied force only after Kelly disregarded verbal commands and

---

[2] Plaintiffs contend that the statements made by the police-practices expert "are incomplete and do not include the cautionary directives to law enforcement officers against inflicting multiple, repetitive hammer blows to a subject's nose . . . that would cause the subject's nose to be broken." But Plaintiffs fail to offer any evidence to support this bald assertion. LRCiv. 56.1(a)-(b); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (reasoning a plaintiff "must do more than simply show that there is some metaphysical doubt as to material facts").

tried to enter the apartment, and the level of force was reasonable and proportional. Indeed, as the police-practices expert observed, the use of force gradually escalated from "verbal commands, followed by physical holds, physical strikes, and Taser cycles" until Kelly was finally subdued. *Goldsmith v. Snohomish Cnty*, 558 F. Supp. 2d 1140, 1150 (W.D. Wash. 2008) (finding the officers' "escalating use of force was proportional to and required by the situation facing the [officers]"). Accordingly, no Fourth Amendment violation occurred and, thus, Kelly's claim of excessive force against both Officer Lindsey and the City of Glendale fails.

Plaintiffs challenge the reasonableness of force by arguing the initial arrest was unlawful because it was not based on probable cause. As provided below, however, there was ample probable cause for the arrest. Moreover, "the excessive force and false arrest inquiries are distinct." *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004). In other words, "establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa." *Id.*; *see Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 (9th Cir. 2015) ("Just proving lack of probable cause for the arrest, for instance, does not establish that the police used excessive force, or, indeed, any force."); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001) (use of force may be reasonable even in the absence of probable cause). Thus, Plaintiffs' challenge fails. Summary judgment will be granted on Count Four.

**B.     Count Five: Wrongful Arrest / False Imprisonment**

Count Five alleges that "[t]he actions of Defendant Lindsey resulted in the wrongful and unlawful arrest and false imprisonment of Mr. Kelly." "Under Arizona law, probable cause is an absolute defense to a claim of false arrest and imprisonment." *Gasho v. United States*, 39 F.3d 1420, 1427 (9th Cir. 1994) (citing *Hockett v. City of Tuscon*, 139 Ariz. 317, 320, 678 P.2d 502, 505 (App. 1983)). "Probable cause to make an arrest exists when the arresting officer has reasonably trustworthy information of facts and circumstances sufficient to lead a reasonable man to believe an offense is being committed and that the person to be arrested committed it." *Hansen v. Garcia*, 148 Ariz.

205, 713 P.2d 1263, 1265 (App. 1985). The existence of probable cause "depends on all of the facts and circumstances known at the time of the arrest," including "the collective knowledge of all of the officers involved in the case." *State v. Keener*, 206 Ariz. 29, 32, 75 P.3d 119, 122 (App. 2003). "Whether a given state of facts constitutes probable cause is always a question of law to be determined by the court." *Slade v. City of Phoenix*, 112 Ariz. 298, 301, 541 P.2d 550, 553 (1975).

Here, Officer Lindsey had ample probable cause to believe Kelly had committed the crime of disorderly conduct. Disorderly conduct occurs when a person engages in "seriously disruptive behavior" or "makes unreasonable noise." A.R.S. § 13-2904(A). Officer Lindsey responded to a 9-1-1 call reporting a disturbance at an apartment complex. The caller complained about the noise caused by Kelly, who was yelling and kicking an apartment door. It is undisputed that the caller lived approximately 75 yards away from Kelly's apartment. Taken together, these factors establish ample probable cause to arrest for disorderly conduct. Moreover, Kelly pled guilty to disorderly conduct and, thus, admits all of the elements of the crime. *See United States v. Cazeres*, 121 F.3d 1241, 1246 (9th Cir. 1997) ("It has long been settled that a guilty plea is an admission of all the elements of a formal charge.") (quotation omitted). Because there was probable cause for the arrest, the arrest was lawful. Therefore, summary judgment will be granted on Count Five.

### C. Count One: Assault and Battery

Count One alleges Officer Lindsey committed assault and battery in effecting the arrest. But under Arizona law police officers may use physical force in effecting an arrest when their conduct is justified. *See* A.R.S. §§ 13-413, 13-409(A). Under A.R.S. § 1409(A), an officer's use of force is justified when (1) the arrestee uses or threatens physical force and (2) a reasonable person would believe that the force is necessary to effect an arrest, (3) the officer either makes known the purpose of the arrest or believes it is otherwise known to the arrestee, and (4) a reasonable person would believe the arrest or detention is lawful.

Each of these elements is satisfied here. First, Kelly used physical force when he resisted the arrest. Second, the use of force was necessary to effect the arrest, as it is undisputed Kelly did not stop struggling with the officers until after a sufficient level of force was applied. Third, a reasonable person would have known the purpose for the arrest. When the officers arrived to the scene, they explained that they were there because of reports that Kelly was causing a disturbance in the complex. Finally, a reasonable person would believe the arrest was lawful. Kelly's acts of kicking and yelling – which was loud enough that neighbors 75 yards away could hear – clearly constituted disorderly conduct, as did Kelly's fighting with the officers. A.R.S. § 13-2904(A)(2). Accordingly, Officer Lindsey cannot be held liable for assault and battery because his conduct was justified in effecting an arrest. A.R.S. §§ 13-409, 13-413. Summary judgment on Count One will be granted.

### D. Count Two: Violations of Due Process under Arizona Constitution

Count Two alleges: "The wrongful conduct of Defendant Lindsey as alleged herein constitutes violations of Arizona Constitution Article II, Section 4 in that Mr. Kelly was deprived of his life and liberty without due process of law." In order to prove a substantive due process violation, the government action must "shock the conscience." *Aegis of Ariz., LLC v. Town of Marana*, 206 Ariz. 557, 569, 81 P.3d 1016, 1028 (App. 2003). As discussed above, Officer Lindsey's conduct was objectively reasonable. Accordingly, summary judgment on Count Two will be granted.

### E. Count Three: Negligence and Gross Negligence

Count Three alleges claims for negligence and gross negligence. Federal district courts are divided on whether, under Arizona law, a police officer is immune from a claim that he negligently arrested a person. *Compare Wright v. City of Phoenix*, No. CV-11-00181-PHX-GMS, 2011 WL 4071993, at *4 (D. Ariz. Sept.13, 2011) (finding immunity), *with Cable v. City of Phoenix*, No. CV-2-00216-PHX-JAT, 2013 WL 6532023, at *12 (D. Ariz. Dec. 13, 2013) (finding no immunity). This Court finds the better view of the Arizona law is that mere negligence in effecting an arrest is not

actionable. However, even assuming an officer could be liable for negligence in effecting an arrest, summary judgment is still appropriate. The tort of negligence requires breach of the duty "to conform to the legal standard of reasonable conduct in the light of the apparent risk." *Stanley v. McCarver,* 208 Ariz. 219, 224, 92 P.3d 849, 854 (Ariz. 2004) (quotation omitted). As discussed above, the arrest of Kelly was based on probable cause and objectively reasonable. Officer Lindsey, therefore, was neither negligent nor grossly negligent. Summary judgment on Count Three will be granted.

**IV.   CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. 51) is granted.

IT IS FURTHER ORDERED that the Clerk enter judgment against Plaintiffs and on their complaint and in favor of Defendants, and that Plaintiffs take nothing.

The Clerk shall terminate this case.

Dated this 18th day of August, 2017.

                                        Neil V. Wake
                             Senior United States District Judge